**FIRST TENNESSEE BANK NATIONAL ASSOCIATION, Plaintiff–Appellant,**

v.

**HURD LOCK & MANUFACTURING COMPANY, a SUBSIDIARY OF AVIS INDUSTRIAL CORPORATION, Defendant–Appellee.**

Court of Appeals of Tennessee, Eastern Section.

May 8, 1991.

Permission to Appeal Denied by Supreme Court Sept. 3, 1991.

Stephen G. Anderson, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Knoxville, for plaintiff-appellant.

Frank P. Cantwell, Jr., Capps, Foutch & Cantwell, Morristown, for defendant-appellee.

## OPINION

McMURRAY, Judge.

This case is before this court for the second time. On the first appeal, the trial court was reversed and the case remanded with instructions to the trial court to reconsider the issue of damages and to determine the amount which the appellee was entitled to set off as against the claims of the appellant. The primary issue before the court on this appeal is whether or not the trial court erred in taking additional proof. The appellant insists that the trial court was limited to the proof introduced at the original trial. We disagree and affirm the action of the trial court.

A short recitation of material facts would perhaps be helpful. Hurd Lock is a manufacturer of locks for motor vehicles and in February 1984, entered into a contract with Ford Motor Company to manufacture and provide certain locks for Ford motor vehicles. In furtherance of its efforts to manufacture the locks, Hurd Lock contracted to purchase certain manufacturing equipment from Oak Ridge Precision Industries, Inc. The plaintiff, First Tennessee Bank, was a secured creditor of Oak Ridge Precision Industries, Inc., and brought this action to recover the balance due from Hurd Lock to Precision Industries. The trial court found in the original trial that the contract price between Hurd Lock and Precision Industries, Inc., was $863,450.00 and that the unpaid balance was $545,950.00. The court further found, however, that Precision had breached its contract with Hurd Lock and that Hurd Lock was entitled to set off against the balance due its damages which resulted from the breach. Damages for lost profits were found to exceed the balance due, thus the Bank could recover nothing from Hurd Lock and the Bank's complaint was dismissed. The Bank appealed the decision of the Chancellor and the Court of Appeals reversed the trial court. This court, speaking through Judge Anderson, held that Hurd Lock had failed to properly establish its lost profits. Specifically, the court said:

... Hurd Lock equates "increased costs" with "lost profits." The equation fails. There is no showing by Hurd Lock that its increased costs as a result of Precision's breach were not passed on to Ford or to its other customers.

.    .    .    .    .

Hurd Lock is entitled to various other damages under T.C.A. § 47–2–714 and § 47–2–715, but the trial court did not determine them. Therefore, we remand this cause to the trial court to determine Hurd Lock's damages resulting from Precision's breach.

Application was made to the Supreme Court for permission to appeal. The application was denied. The Supreme Court, however, chose to state the reason for its action: "The foregoing action [denial of permission to appeal] is taken because this Court understands the opinion of the Court of Appeals to permit the appellant to recover all damages which it may establish by competent proof, including loss of profits to the extent that these can be shown by competent reliable evidence instead of speculative proof."

The trial court, on remand, construed the opinion of the Court of Appeals and the statement by the Supreme Court as authorizing or requiring a rehearing on damages. Accordingly, he re-opened the proof and allowed the parties to introduce additional evidence. Hurd Lock presented additional evidence concerning lost profits. First Tennessee Bank objects to the additional evidence and insists that on remand the trial court was in error in re-opening

the proof, but on the other hand insists that the court should have determined damages from the record of the previous trial. We respectfully disagree.

■ The general rule that the appellate courts have a duty to render judgments which the lower court should have rendered, has long been established in this jurisdiction. See i.e., *Toomey v. Atyoe, et al*, 95 Tenn. 373, 32 S.W. 254 (Tenn.1895), and *Perry v. Carter*, 188 Tenn. 409, 219 S.W.2d 905 (Tenn.1949). The Bank insists that this rule, especially when coupled with T.C.A. § 27–3–128 entitles the Bank to a judgment on the record and that the trial court was without authority to receive additional proof. We suggest that the Bank misconstrues T.C.A. § 27–3–128 which provides as follows:

**27–3–128. Remand for correction of record.**—The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right.

It is apparent that the forgoing section of the Code, and the present Rule 24 of the Tennessee Rules of Appellate Procedure are geared toward a correction of the record rather than a remand after reversal of the trial court. More appropriate to the case at hand is T.C.A. § 27–3–125 and Rule 36(a) of the Tennessee Rules of Appellate Procedure.

T.C.A. § 27–3–125 provides:

**27–3–125. Judgment on reversal.**—If the judgment or decree of the inferior court is reversed, the appellate court shall render such judgment or decree as should have been rendered in the inferior court, and shall issue execution without a procedendo, except where the damages to be assessed are uncertain, in which case the court, if of last resort, shall remand the cause for further proceedings.

It is probable that T.C.A. § 27–3–125 has now been superseded by the Tennessee Rules of Appellate Procedure. Rule 36(a) T.R.A.P. provides in pertinent part as follows:

**Relief; Effect of Error.**—(a) Relief To Be Granted; Relief Available.—The Supreme Court, Court of Appeals, and Court of Criminal Appeals shall grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires and may grant any relief, including the giving of judgment and making of any order; provided, however, relief may not be granted in contravention of the province of the trier of fact.

While we, under the general rule of *Toomey*, supra, are inclined to agree that judgment could and perhaps should, under ordinary circumstances, be granted in the appellate courts when the judgment of the trial court, sitting without the intervention of a jury, is reversed, we do not view the rule as mandatory. We believe the better view is that a remand for further proceedings is within the purview of judicial discretion, especially when issues have been left undecided by the trial court. This view is supported by the official comments to the text of the Advisory Commission comments to Rule 36(a), T.R.A.P. wherein it is said as the introductory remark: *"Subdivision (a).* This subdivision makes clear that the appellate courts are empowered to grant whatever relief an appellate proceeding requires." Thus, we are led to the conclusion that this court, in its original opinion, envisioned and intended that the trial judge, on remand, take all action necessary to do complete justice, including the reception of additional proof. Otherwise a remand to establish damages would have been unnecessary. Apparently the same conclusion was reached by the Supreme Court when reviewing the application for permission to appeal. In our view, when the Supreme Court denied permission to appeal, the Court declined to accept jurisdiction to review the merits of the case. This being so, the reason stated for denying permission to appeal does not possess the efficacy of a Supreme Court decision. Thus, while we

may decline to accept the order denying permission to appeal as binding authority for the proposition that a new trial on damages was ordered, nevertheless, the order is persuasive in that it reflects an interpretation of the Court of Appeals opinion consistent with our own. We hold that the reception of new evidence was not error.

The appellant raises three additional issues for our consideration.

1. Did the Chancellor err in concluding that Hurd Lock is entitled to damages for lost profits and diminution of value?

2. Did the Chancellor err in failing to determine the specific amount of damages to be awarded Hurd Lock as directed by this court in its opinion dated August 19, 1988?

3. Did the Chancellor err in failing to award appellant pre-judgment interest?

We undertake our review of the remainder of the case cognizant of our duty under Rule 13(d), Tennessee Rules of Appellate Procedure. Findings of fact by the trial court in civil actions shall be de novo upon the record, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. In so doing, we note that no presumption attaches to conclusions of law.

We shall dispose of the issues in reverse order. As to prejudgment interest, our disposition of the other issues results in this issue being pretermitted. The plaintiff has no judgment upon which pre-judgment can attach.

■ With regard to damages to which Hurd Lock was entitled, a specific amount, as between these parties, is irrelevant if the aggregate exceeds the unpaid balance of the contract price between Hurd Lock and Oak Ridge Precision Industries, Inc. The chancellor found that Hurd Lock's damages *"far"* exceed the balance owing plaintiff under the contract." In any event, if the plaintiff desired a more detailed finding of fact, Rule 52 of The Tennessee Rules of Civil Procedure should have been invoked and a motion made in accordance therewith for an additional finding of fact. The plaintiff, having declined or having failed to take advantage of this remedy, will not now be heard to complain. Therefore, we hold that the chancellor was not in error for failing to determine the amount of damages more specifically.

■ The final issue, i.e., "did the chancellor err in concluding that Hurd Lock is entitled to damages for lost profits and diminution of value," requires an examination of T.C.A. §§ 47–2–714 and 47–2–715. These sections in pertinent part provide as follows:

**47–2–714. Buyer's damages for breach in regard to accepted goods.—**(1) Where the buyer has accepted goods and given notification (subsection (3) of § 47–2–607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section may also be recovered.

**47–2–715. Buyers incidental and consequential damages.—**(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include:

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which

could not reasonably be prevented by cover or otherwise.

(b) . . .

■ It seems clear that the statutes, when considered together, contemplate a recovery of "diminution of value" (47–2–714(2)) and "lost profits" (47–2–714(3) and 47–2–715(2)(a)). Care must be taken, however, to avoid double recoveries by allowing the same damage twice under different designations. See *Ford Motor Co. v. Taylor*, 60 Tenn.App. 271, 446 S.W.2d 521 (1969). In *Ford* the court also implicitly approved and allowed recovery of both diminution of value and consequential losses. There, it was said:

"In the present case the trial court and this Court have the power and duty to honestly estimate the fair compensation due plaintiff without being bound to accept the exact amount proposed in the testimony of any particular witness. The amount of difference in value testified to by plaintiff is deemed excessive . . . Some lesser amount would be more in accord with the evidence in the record.

The other element of damages consists of consequential losses occurring because the plaintiff was unreasonably deprived of the use of the tractor. Such damages are allowable under proper circumstances." (Citing authorities).

We next decide whether "lost profits" are allowable as consequential damages under the circumstances of this case. In so doing, we must remain aware that "lost profits" and "consequential damages" are not necessarily synonymous. A reduction in net profits is simply one method of estimating or measuring consequential damages.

We have been directed by counsel to no cases in this jurisdiction addressing the issue after adoption of the *Uniform Commercial Code* nor have we discovered any. Prior cases, however, do give guidance. In *Black v. Love & Amos Coal Co.*, 206 S.W.2d 432 (Tenn.App.1947) the principle is stated thus:

"The proper measure of damages in general is the difference between the contract price and the market price of goods at the time when, and place where, the contract is broken, because the purchaser having the money in his hands may go into the market and buy. (Citing authorities).

In cases, however, where there is no available market or where there are other special circumstances enhancing his loss, the buyer may recover such damages as naturally arise, according to the usual course of things, from the seller's breach, or such as may reasonably be supposed to have been contemplated by the parties, at the time of making the contract, as the probable result of its breach."

The court in *Black,* supra expressly approved the recovery of lost profits under circumstances where there was no available market and where the lost profits could be established to a reasonable certainty. The reasoning of *Black* is sound and we find no reason to reject it in this case. Obviously, there is no available market for a custom designed piece of machinery.

The second requirement of *Black* is that the damages must be established to a reasonable certainty. In this case, the court determined that the defendant had proved with reasonable certainty, the time and number of employees required to produce a given number of locksets. He further found that direct labor costs incurred by the defendant due to the delay in furnishing the equipment and its failure to perform as promised, "run into the millions of dollars."

The chancellor did not address one of the primary concerns of the Court of Appeals in its earlier opinion, i.e. was the increased cost passed on to Hurd Lock's customers. It is clear from the record, however, that the locksets were sold to Ford Motor Co. for a fixed price, established before the breach, and that the increased costs of production occasioned by the breach of contract by Precision was not in fact passed on to Hurd Lock's customers.

■ In the final analysis, however, it matters little, if any, what label we choose

to place on an element of damage. If a direct out-of-pocket expense is incurred by a party as a direct and proximate result of a breach of contract, that expense, if within the contemplation of the parties, is a consequential damage. If such a consequential damage can be demonstrated by a preponderance of the evidence and *measured* without reference to loss of gross profits or net profits, it is nevertheless recoverable. See, for example, *American Buildings Company v. DBH Attachments, Inc.,* 676 S.W.2d 558 (Tenn.App.1984). Such is the case here. The evidence supports a finding that consequential damages have been suffered by Hurd Lock as a result of Precision's breach and measured either by "lost profits" or direct out-of-pocket expense, the damages exceed the balance due on the contract price. Using this rationale we note that the same result is supported by the evidence without reference to the additional proof received by the court after remand.

The evidence does not preponderate against the findings of the chancellor. We are satisfied that consequential damages have been established to a reasonable certainty, and that, as the chancellor found, the damages exceed the unpaid balance of the contract price.

In conclusion, we find no reversible error. Accordingly, the judgment of the trial court is affirmed. Costs are taxed to the appellant and the case is remanded to the trial court for the collection thereof.

SANDERS, P.J. (E.S.), and FRANKS, J., concur.