# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### MARCH 2, 2005 Session

## SUZAN DARVARMANESH v. MAHYAR GHARACHOLOU

**Direct Appeal from the Circuit Court for Davidson County**
**No. 02D-237     Muriel Robinson, Judge**

---

### No. M2004-00262-COA-R3-CV - Filed July 19, 2005

---

In 2002, Wife filed a complaint for divorce in the circuit court. Following a bench trial, the trial court entered a final decree of divorce and incorporated the court's permanent parenting plan. The trial court ordered the husband to pay the wife transitional alimony for three years, awarded the parents joint custody of their minor son, and ordered both parents to pay child support. The wife filed an appeal to this Court contesting the trial court's decision regarding joint custody. The husband filed an appeal to this Court contesting the trial court's decisions regarding alimony and child support. We reverse the trial court's decisions regarding alimony, child custody, and child support, and we remand this case tot he trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Thomas F. Bloom, Nashville, TN, for Appellant

Cynthia J. Bohn, Paul W. Moser, Nashville, TN, for Appellee

# OPINION

## I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Suzan Darvarmanesh ("Wife" or "Appellant") was born in the United States, but she was raised primarily in Iran. Mahyar Gharacholou ("Husband" or "Appellee") was born in Iran, and he came to the United States with his parents at the age of twelve. In 1990, Wife returned to the United States to pursue a college education. In May of 1993, Husband and Wife married in Nashville, Tennessee. The parties were married in an Islamic marriage ceremony and signed an Islamic marriage contract. Both parties are presently citizens of the United States. The parties have a minor son of their marriage, Cameron, who was born in 2000.

On January 29, 2002, Wife filed a complaint for divorce against Husband in the Circuit Court of Davidson County alleging numerous grounds for divorce.[1] Husband subsequently filed an answer which contained his counter-complaint for divorce. Therein, Husband asked the trial court to award him the majority of the parenting time for Cameron. The trial court conducted a trial of the matter on October 28, 2003.

During the proceeding, both parties presented their proposed parenting plans to the trial court. Wife's proposed parenting plan made her the primary residential parent of Cameron, with Husband having liberal visitation, and it required Husband to pay child support. Husband presented two proposed parenting plans. His first proposed parenting plan named him the primary residential parent of Cameron and called for Mother to pay child support. Husband also submitted an alternative proposed parenting plan which named Wife the primary residential parent of Cameron, called for him to pay child support, and granted him additional visitation.

On December 23, 2003, the trial court entered a Final Decree of Divorce which incorporated a Permanent Parenting Plan entered by the trial court that same day. The trial court's decree provided, in relevant part, as follows:

> It is ORDERED, ADJUDGED, and DECREED that the Husband shall pay to the Wife for a period of three years the sum of $750.00 per month transitional alimony beginning November 1, 2003. Said transitional alimony payments of the Husband shall cease if the Wife remarries or the three years terminate whichever occurs first.
> . . . .
> It is ORDERED, ADJUDGED, and DECREED that the Islamic marriage document of the parties is not a binding contract.
> . . . .

---

[1] On February 12, 2002, Wife filed an amended complaint to change certain statistical information contained in the original complaint.

It is ORDERED, ADJUDGED, and DECREED that the parties shall have joint custody of the minor child. The Father will have custody of the child from January 1st until June 30th. The Mother will have custody of the child from July 1st until December 31st. The Court makes a finding that they are both appropriate parents, they both have appropriate parenting skills, and that is [sic] in the best interest and welfare of this child that custody be joint with parenting time equal.

It is ORDERED, ADJUDGED, and DECREED that for the purposes of public school zoning the Father's residence shall be designated as the primary residence. The Court finds that it is in the best interest and welfare of the child that the Father's residence be the primary residence insofar as it pertains to the public school zoning. This is no reflection on the Mother.

The Permanent Parenting Plan also designated which parent would have custody of Cameron for school vacations and certain holidays. It also ordered the parties to pay child support as follows:

The Mother shall pay child support, in accordance with the Tennessee Child Support Guidelines, in the amount of $220.00 per month, beginning January 1, 2004 through June 30 each year for six months each year. Plus a payment of $750.00 per month in transitional alimony. Said amount of child support takes into consideration Mother's ability to earn $25,000.00 per year.

The Father shall pay child support, in accordance with the Tennessee Child Support Guidelines, in the amount of $660.00 per month beginning November 1, 2003 through December 31 each year for six months each year. Said amount of child support is based on Father's ability to earn $50,000.00 per year.

Regarding decision making, the plan provided that, while Cameron resided with one parent, that parent would make decisions regarding his day-to-day care and control. As for major decisions, the trial court ordered the parents to make such decisions jointly.

Husband subsequently filed a post-trial motion pursuant to Rule 59 of the Tennessee Rules of Civil Procedure asking the trial court to reconsider its award of alimony and child support. In the interim, Wife filed a notice of appeal to this Court. The trial court ultimately denied Husband's post-

trial motion, and he also filed a notice of appeal to this Court.[2] On appeal, Wife has presented this Court with the following issues for our review:

I.      Whether the trial court erred in awarding the parties joint custody of their minor son when the preponderance of the evidence did not support such a finding; and

II.     Whether Wife is entitled to her attorney's fees on appeal.

In turn, Husband has presented this Court with the following additional issues for our review:

III.    Whether the trial court erred in setting the parties' child support obligations;

IV.     Whether the trial court erred in awarding Wife transitional alimony; and

V.      Whether Husband is entitled to his attorney's fees on appeal.

For the reasons set forth more fully herein, we reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion.

## II.
### LAW AND ANALYSIS

### A.
### *Child Custody*

On appeal, Wife Argues that the trial court erred in awarding the parties joint custody of Cameron. She contends that the record demonstrates that a level of animosity exists between the parents which prevents joint custody from being an option in this case. Furthermore, she contends that there was insufficient evidence introduced at trial to enable the trial court to conduct a comparative fitness evaluation of each parent before making its custody determination. Alternatively, Wife asserts that the record reveals that a majority of the relevant statutory factors to be considered in making a custody determination weigh in her favor.[3] Conversely, Husband argues that the record contains ample proof to support the trial court's determination of custody in this case.

---

[2]Ordinarily, "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a) (2003). However, "[i]n a civil action, if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party . . . under rule 59.04 to alter or amend the judgment . . . the time for appeal for all parties shall run from entry of the order denying a new trial or granting or denying any such other motion." Tenn. R. App. P. 4(b) (2003). "A prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." Tenn. R. App. P. 4(d) (2003). Accordingly, both parties have filed their notices of appeal to this Court in a timely manner.

[3]Wife changed counsel after filing her initial brief in this Court. By Order of the Court, we permitted Wife's new counsel to file a responsive brief. Wife raises this new argument in her reply brief, therefore, we will treat it as an alternative argument raised on appeal.

-4-

In reviewing a trial court's decision regarding child custody, we examine the trial court's findings of fact "*de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d) (2003); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. Ct. App. 1984); *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983).

"No hard and fast rules exist for determining which custody and visitation arrangement will best serve a child's needs." *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996) (citing *Taylor v. Taylor*, 849 S.W.2d 319, 327 (Tenn. 1993); *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983)). Determinations of this nature are factually driven and require a trial court to consider numerous factors. *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). "Where a divorce case is tried upon oral testimony and issues of fact depend largely upon the comparative credibility of the parties, the findings of the Trial Judge are entitled to great weight on appeal and are not to be lightly overturned." *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973) (citations omitted); *see also Nelson v. Nelson*, 66 S.W.3d 896, 902-03 (Tenn. Ct. App. 2001); *Gaskill*, 936 S.W.2d at 631. Despite a trial court's broad discretionary powers in making a custody determination, *Herrera v. Herrera*, 944 S.W.2d 379, 385-86 (Tenn. Ct. App. 1996), its decision must still be based upon the proof presented at trial and the applicable law. *Gaskill*, 936 S.W.2d at 631.

In reaching a custody determination, the courts of this state must evaluate the comparative fitness of both parents by considering numerous relevant factors. *Bah*, 668 S.W.2d at 666; *see also Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). The legislature has codified many of the factors a court should consider in making a custody decision. Tenn. Code Ann. § 36-6-106(a) (2003); Tenn. Code Ann. § 36-6-404(b) (2003); *see also Shofner v. Shofner*, No. M2003-01550-COA-R3-CV, 2004 Tenn. App. LEXIS 865, at *32 (Tenn. Ct. App. Dec. 23, 2004); *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 Tenn. App. LEXIS 676, at *24 (Tenn. Ct. App. Oct. 15, 2004). Out of all of the factors which may be relevant in a given case, the welfare and best interest of the child must be the court's paramount concerns. *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995); *Bah*, 668 S.W.2d at 665. In an initial custody determination, the trial court's consideration of the relevant factors when evaluating each parent's comparative fitness to parent the minor child culminates in the creation of a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a) (2003); *see also Cummings*, 2004 Tenn. App. LEXIS 676, at *13-14.

As in many divorce cases which come before this Court, the record in this case contains abundant evidence regarding property division and very little evidence focusing upon the welfare of the child. *See DeVault v. DeVault*, No. 01-A-01-9601-CV-00012, 1996 Tenn. App. LEXIS 536, at *10 (Tenn. Ct. App. Aug. 28, 1996); *Garner v. Garner*, 773 S.W.2d 245, 246 (Tenn. Ct. App. 1989). Our review is further complicated by the fact that, other than stating that both parents were fit and that joint custody was in Cameron's best interests, the trial court made no specific factual findings regarding the proof related to custody of Cameron. When issuing its judgment, a trial court is not required to list every applicable factor along with a discussion of how that particular factor impacted the court's custody determination. *See Mueller v. Mueller*, No. W2004-00482-COA-R3-

CV, 2004 Tenn. App. LEXIS 770, at *16 (Tenn. Ct. App. Nov. 17, 2004); *Burnett v. Burnett*, No. E2002-01614-COA-R3-CV, 2003 Tenn. App. LEXIS 508, at *16. (Tenn. Ct. App. July 23, 2003). However, when the trial court fails to make specific findings of fact, we must review the record *de novo* to determine where the preponderance of the evidence lies. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). As we have previously stated,

> In this case, our ability to attach the presumption of correctness to the trial court's decision has been hampered by the absence of any findings of fact and conclusions of law by the trial judge or any other explanation of the rationale used to achieve the final result. Other than a transcript of the proceedings, we are presented with a memorandum opinion and order which, without elaboration or explanation, grants the divorce . . ., awards custody of the child . . ., and divides the jointly held property. In a record containing material evidence adverse to the positions taken by each spouse, we will not make our decision by attempting to discern the reasons for the trial court's decision. Rather we will proceed to review the record *de novo*. Since the trial court made no findings of fact, there is nothing in this record upon which the presumption of correctness contained in Tenn.R.App.P. 13(d) can attach.

*Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984).

The record reveals that both parents demonstrate love, affection, and a strong emotional tie to Cameron. Tenn. Code Ann. § 36-6-106(a)(1) (2003); Tenn. Code Ann. § 36-6-404(b)(7) (2003). Another relevant factor to consider is each parent's ability to provide for Cameron's physical, medical, and educational needs, as well as the extent to which a parent has been the primary caregiver. Tenn. Code Ann. § 36-6-106(a)(2) (2003); Tenn. Code Ann. § 36-6-404(b)(2), (5) (2003). Husband testified that, prior to separating from Wife, he was the one primarily responsible for taking Cameron to the doctor. Husband also testified that he was capable of cooking nutritious meals for Cameron. Conversely, Wife testified that she has been Cameron's primary caregiver since birth, and Husband did little to help. While she has acknowledged that Husband occasionally changed Cameron's diapers, Wife testified that Husband never bathed their son and never cooked. Wife stated that, prior to going to work on the second shift, she would pre-cook meals for Cameron to eat.

Regarding Cameron's educational needs, Husband expressed his concerns that Cameron cannot speak English and only speaks Farsi, their native language. According to Husband, Wife, who was living with her parents at the time of the trial, only permits Cameron to speak English on Tuesdays. Husband testified that Wife's mother is the one who insists that Cameron speak Farsi. Husband also stated that, if awarded primary custody, he would place Cameron in a preschool to better acclimate him to American culture and the English language. In support of Husband's position, his sister testified that Cameron does not speak English well. Wife admitted that Farsi is the primary language spoken in her parents' home, and she previously only spoke English to Cameron on Tuesdays. She also testified that it is not a rule in her parents' home that Cameron

could only speak English one day a week. To the contrary, Wife testified that she is working with Cameron on learning the English language. Wife stated that, at the time of trial, she was in the process of enrolling Cameron in preschool for three days per week, she takes him to the library, and she plays games to further develop his language abilities. Wife admitted that Cameron is fluent in Farsi and spoke little English at the time of the hearing, but she expressed her desire that Cameron learn both languages. At trial, Husband introduced a videotape of his sister playing with Cameron in order to demonstrate Cameron's language abilities. After viewing the videotape, we agree with the trial court in that the videotape is not very intelligible.

We also consider Cameron's emotional needs and developmental level by noting that Cameron was three years old at the time of trial. Tenn. Code Ann. § 36-6-404(b)(8) (2003). Regarding each parent's ability to instruct and parent Cameron, Tenn. Code Ann. § 36-6-106(a)(10) (2003); Tenn. Code Ann. § 36-6-404(b)(1) (2003), we also note that both parents have college educations. Each parent's employment schedule is also a factor in custody determinations. Tenn. Code Ann. § 36-6-404(b)(15) (2003). At the time of trial, Mother was working part-time on second shift three days per week, and she anticipated subsequently moving to first shift. In turn, Husband is employed full time.

We also consider the importance of continuity in Cameron's life, and the length of time he has lived in a stable, satisfactory environment. Tenn. Code Ann. § 36-6-106(a)(3) (2003); Tenn. Code Ann. § 36-6-404(b)(11) (2003). During the pendency of the proceedings below, the trial court ordered that Cameron primarily reside with Wife and granted Husband visitation on Wednesday nights and every other weekend. Regarding the stability of each parent's family unit, Wife resided with her parents at the time of trial while Husband was in the process of moving into an apartment. Tenn. Code Ann. § 36-6-106(a)(4) (2003). The record also demonstrates that Cameron interacts well with the extended family of both parents. Tenn. Code Ann. § 36-6-106(a)(9) (2003); Tenn. Code Ann. § 36-6-404(b)(13) (2003). The evidence regarding each parent's willingness to encourage a close and continuing relationship between Cameron and the other parent is in dispute. Tenn. Code Ann. § 36-6-106(a)(10) (2003); Tenn. Code Ann. § 36-6-404(b)(3) (2003). Wife testified that she encourages Husband to take an active role in Cameron's life. Husband disagreed, stating that Wife does not encourage his relationship with Cameron. Husband testified that shortly after September 11, 2001, Wife took Cameron to Iran to visit family and did not communicate with him while they were gone. He was only able to reach them after he called several numbers to locate them. Wife testified that she has no intention of returning to Iran permanently. Husband's sister testified that Wife does not encourage a relationship between Husband and son.

In custody disputes, as this case demonstrates, a review of the record typically reveals that the evidence does not clearly preponderate in favor of one party but contains contradictory testimony by the witness. *See Barrett v. Barrett*, M2000-00380-COA-R3-CV, 2001 Tenn. App. LEXIS 765, at *4 (Tenn. Ct. App. Oct. 12, 2001). Unlike appellate courts, the trial courts are able to observe the witnesses and assess their demeanor as they testify, therefore, they are in the more favorable position to resolve factual disputes hinging on the credibility of the witnesses. *Wells v. Tenn. Bd. of*

*Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Thus, when the proof is close, as it is in this case, we rely heavily upon the determinations of credibility made by the trial court. *See Beck v. Beck*, No. 03A01-9601-CV-00023, 1996 Tenn. App. LEXIS 134, at *3 (Tenn. Ct. App. 1996); *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Ten. Ct. App. 1995); *Williams v. Williams*, No. 89-63-II, 1989 Tenn. App. LEXIS 768, at *6-7 (Tenn. Ct. App. Nov. 17, 1989). However, when a trial court fails to make findings of fact or determinations of credibility, our task on appeal is complicated.

In any event, based upon our review of the record and applicable law, we believe the evidence preponderates against the trial court's finding that joint custody is in the best interest of the child in this case. First, the relevant statutory factors weigh in favor of granting Wife primary custody of Cameron. It was undisputed at trial that she has been the child's primary caregiver since birth. Wife is working part-time and has more time to devote to Cameron's needs, whereas Husband is working full time. Additionally, when she is working, Wife's parents are able to care for and supervise Cameron. Since the parties' separation, Cameron has lived primarily with Wife, and Husband has exercised visitation. Due to Cameron's young age, his need for stability and continuity is of great concern, and maintaining the arrangement which has existed since the parties' separation promotes this interest. *See Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004, Tenn. App. LEXIS 676, at *27 (Tenn. Ct. App. Oct. 15, 2004).

Second, even if we were to conclude that the evidence presented at trial did not preponderate against a finding that both parents were equally fit, such a finding would not invariably lead to the conclusion that a joint custody arrangement is in the child's best interest. *See id*. at *26-27. The legislature does not forbid a court of this state from awarding the parties joint custody of a minor child in appropriate circumstances. Tenn. Code Ann. § 36-6-101(a)(1) (2003). To the contrary, the legislature simply provides that "neither a preference nor a presumption for or against joint legal custody, joint physical custody or sole custody is established, but the court shall have the widest discretion to order a custody arrangement that is in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(A) (2003).

Joint custody arrangements are appropriate in certain limited circumstances. *See Zabaski v. Zabaski*, No. M2001-02013-COA-R3-CV, 2002 Tenn. App. LEXIS 867, at *12 (Tenn. Ct. App. Dec. 11, 2002); *Martin v. Martin*, No. 03A01-9708-GS-00323, 1998 Tenn. App. LEXIS 218, at *15-17 (Tenn. Ct. App. Mar. 26, 1998); *Gray v. Gray*, 885 S.W.2d 353, 355 (Tenn. Ct. App. 1994); *Barnhill v. Barnhill*, 826 S.W.2d 443, 454 (Tenn. Ct. App. 1991). However, while authorized by statute, joint custody arrangements are generally disfavored by the courts of this state due to the realization that such rarely serves the best interest of the child. *See Shelbourne v. Shelbourne*, No. M1999-02557-COA-R3-CV, 2000 Tenn. App. LEXIS 561, at *6 (Tenn. Ct. App. Aug. 22, 2000); *Dix v. Carson*, No.02A01-9704-CV-00093, 1998 Tenn. App. LEXIS 840, at *29-30 (Tenn. Ct. App. Dec. 17, 1998); *DeVault v. DeVault*, No. 01-A-01-9601-CV-00012, 1996 Tenn. App. LEXIS 536, at *5-6 (Tenn. Ct. App. Aug. 28, 1996); *Jackson v. Jackson*, No. 01A01-9504-CV-00132, 1995 Tenn. App. LEXIS 762, at *4-5 (Tenn. Ct. App. Nov. 29, 1995); *Malone v. Malone*, 842 S.W.2d 621, 623 (Tenn. Ct. App. 1992); *Lewis v. Lewis*, No. 89-287-II, 1990 Tenn. App. LEXIS 103, at *12 (Tenn. Ct. App. Feb. 16, 1990); *Garner v. Garner*, 773 S.W.2d 245, 245 (Tenn. Ct. App. 1989);

*Dodd v. Dodd*, 737 S.W.2d 286, 289-90 (Tenn. Ct. App. 1987); *Bloom v. Bloom*, No. 85-198-II, 1986 Tenn. App. LEXIS 2855, at *5 (Tenn. Ct. App. Mar. 12, 1986); *Dunavant v. Dunavant*, 219 S.W.2d 910, 916 (Tenn. Ct. App. 1949); *Logan v. Logan*, 176 S.W.2d 601, 603-04 (Tenn. Ct. App. 1943).

The statute does not require that joint custody be awarded only when the parents are on friendly terms, *DeVault*, 1996 Tenn. App. LEXIS 536, at *8, however, in order for a joint custody arrangement to serve the best interest of the child, it requires a "harmonious and cooperative relationship between both parents." *Dodd*, 737 S.W.2d at 290; *see also Shelbourne*, 2000 Tenn. App. LEXIS 561, at *6; *Dix*, 1998 Tenn. App. LEXIS 840, at *30; *Jackson*, 1995 Tenn. App. LEXIS 762, at *5. "While we have stopped short of rejecting this type of custody arrangement outright, divided or split custody should only be ordered when there is *specific, direct proof* that the child's interest will be served best by dividing custody between the parents." *Garner*, 773 S.W.2d at 248 (Koch, J., dissenting) (emphasis added); *see also Zabaski v. Zabaski*, No. M2001-02013-COA-R3-CV, 2002 Tenn. App. LEXIS 867, at *12 (Tenn. Ct. App. Dec. 11, 2002) (finding joint custody appropriate where the record revealed the parents were able to communicate effectively regarding their son, they shared parenting and household duties while married, and one of the parties suggested a joint custody arrangement); *Martin v. Martin*, No. 03A01-9708-GS-00323, 1998 Tenn. App. LEXIS 218, at *15-17 (Tenn. Ct. App. Mar. 26, 1998) (affirming the trial court's award of joint custody due to the fact that the parents had previously agreed to a joint custody arrangement); *Gray v. Gray*, 885 S.W.2d 353, 354-55 (Tenn. Ct. App. 1994) (finding that the evidence demonstrated that both parents were very active in the child's life and there was no apparent animosity between the parties).

The record in this case reveals a heightened level of animosity between the parties and an inability to communicate regarding Cameron, thereby making a joint custody arrangement undesirable. Husband testified concerning his animosity toward Wife's family, expressing his belief that they are too controlling. Wife testified that her parents traveled with her to drop off Cameron at the Husband's residence, and, in an apparent effort to avoid confrontation, she parked next door and walked Cameron over to the Husband's house. The testimony from both parents reveals that they have difficulty agreeing on the best way to educate Cameron and assimilate him into American culture. Husband testified that, since their separation, Wife has not communicated with him concerning Cameron's medical needs. He also testified about his difficulty in contacting his Wife when she took Cameron to Iran to visit family. Furthermore, neither parent's proposed parenting plans suggested a joint custody arrangement. To the contrary, throughout the proceedings below, each parent has fought to receive primary custody of Cameron. *Cf. Martin v. Martin*, No. 03A01-9708-GS-00323, 1998 Tenn. App. LEXIS 218, at *15-16 (Tenn. Ct. App. Mar. 26, 1998) (noting that prior agreements between the parties regarding custody may be considered by the trial court as evidence of the appropriate custody arrangement in a given case).

Accordingly, a joint custody arrangement is not in Cameron's best interest, and we reverse the trial court's award of joint custody to the parents. As we have previously stated,

> The experience of this Court has been that joint custody rarely, if ever, works — for the children. There needs to be one residence, one haven in all the storms of life, including those storms whipped up by the winds of divorce. There needs to be one parent with primary control and responsibility for the upbringing of the parties' children, whenever possible. Custody, in reality, means responsibility for the care, nurture and development of the mental, emotional and physical needs of the child. The custodial parent should expect and receive cooperation and assistance from the non-custodial parent in every respect to serve the best interests of their child or children.

*Dodd*, 737 S.W.2d at 289-90.  Thus, it is necessary that we remand this case to the trial court with instructions on fashioning a new permanency plan. *See First Tenn. Bank Nat'l Assoc. v. Hurd Lock & Mfg. Co.*, 816 S.W.2d 38, 40 (Tenn. Ct. App. 1991) (discussing Tenn. R. App. P. 36(a) and noting our discretion in entering a judgment when a reversal is necessary); *see also Cummings v. Cummings*, M2003-00086-COA-R3-CV, 2004 Tenn. App. LEXIS 676, at *28-29 n. 6 (Tenn. Ct. App. Oct. 15, 2004).  On remand, the trial court is instructed to create a new parenting plan naming Wife the primary residential parent of Cameron and granting Father liberal visitation.[4]  In the interim, we reinstate the custody arrangement ordered by the trial court during the pendency of the divorce proceedings.

### B.
### *Child Support*

On appeal, Husband argues the trial court erred in setting his child support obligation by failing to calculate the child support obligation using his current income.  Regarding Wife's child support obligation, Husband argues the trial court erred in not calculating her child support obligation based on the potential salary she could earn by working full-time.  In addition, he contends that the trial court erred by not including his alimony payments in the amount of $750.00 per month in the calculation of Wife's child support obligation.

The evidence in the record regarding the issue of child support is minimal.  Husband has a master's degree in computer science.  At trial, Husband testified that he is currently working for N&S, Inc., a Nashville parts distribution company, as a computer programmer systems analyst.  At his present job, Husband earns $600.00 per week, or approximately $31,000.00 per year. Prior to his present job, Husband worked for Service Merchandise Company ("Service Merchandise") as a computer programmer systems analyst making approximately $52,000.00 per year.  He worked for Service Merchandise for approximately nine years before the company terminated his position and filed for bankruptcy in 2002.  Husband testified that the last time he interviewed for other

---

[4]It is entirely permissible for the trial court on remand to allow the parties to attempt ot reach an agreement regarding custody of Cameron consistent with this opinion. *Cummings*, 2004 Tenn. App. LEXIS 676, at *29-30.  In the event they are unable to do so, the trial court shall implement a parenting plan consistent with this opinion.

employment was in the summer of 2002, and he stated that he has not applied for any other employment.

Shortly into Husband's testimony on direct examination, the trial court made the following statement:

> THE COURT:    Mr. Gharacholou, you're capable of making $50,000,  and that's what the child support is going to be set on, if you are not awarded custody.  So quit Mickey Mousing around up here. You've got the ability to earn.  You've got to go back to work. You've got a master's degree in Computer Science.  Go get a job in your field.  Got it?
> . . . .
> THE COURT:    Don't delay my court time here.  We have established that point.  And Ms. Bohn knows that he's going to have to get a job.  If he doesn't get a job, if he doesn't get custody of this child, he's going to have to pay the support, anyway, so don't belabor my time here.

At the conclusion of the trial, the trial court stated orally on the record that it found Husband to be underemployed.

Wife obtained her bachelor's degree shortly after coming to the United States. Wife testified that she is a medical technologist working at the Veteran's  Administration Hospital where she has been employed for the past six years. At the time of trial, Wife testified that she was working part-time at the hospital on the second shift, approximately three days per week for a total of twenty-four hours, making almost $20.00 per hour.  She testified that she was getting ready to move to a first shift position.  Wife admitted that she could work full-time if she wanted to, but only on second shift.  If she were to work full-time, she estimated that she could potentially make approximately $41,000.00 in income each year.   Regarding Wife, the trial court provided the following statement at the conclusion of the trial: "When her salary goes up, then her child support will go up.  And you can't exist on what you are doing now.  You've got to go to work full-time."

Since setting child support is a discretionary matter, we review a trial court's child  support award to determine whether the trial court abused its discretion. *Tallent v. Cates*, 45 S.W.3d 556, 560 (Tenn. Ct. App. 2000); *State ex. rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).  Under this standard of review, we are required to consider the following:

> (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. . . While we will set aside a discretionary decision if it rests on an inadequate evidentiary

foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*Kaatrude*, 21 S.W.3d at 248 (citations omitted). On appeal, neither parent takes issue with the legality of the trial court's decision to require both parents to pay child support in this case. After evaluating the record in this case, however, it is apparent that the trial court's decision regarding the parties' child support obligation is in contravention of the governing law applicable in this case.

The Tennessee Child Support Guidelines ("Guidelines") in effect at the time this case was decided by the trial court[5] provide:

> These guidelines are designed to apply to situations where children are living primarily with one parent but stay overnight with the other parent at least as often as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year. These guidelines are designed to consider the actual physical custody of the child(ren), *regardless of whether custody is awarded to one parent and visitation to the other or such an arrangement is ordered to be joint custody or split custody.* In situation where overnight time is divided more equally between the parents, the courts will have to make a *case-by-case determination* as to the appropriate amount of support. (reference 1240-2-4-.04).

Tenn. Comp. R. & Regs. 1240-2-4-.02(6) (2003) (emphasis added). The Guidelines further provide that "the parent with whom the child(ren) live primarily will be referred to as the obligee and the parent with whom the child(ren) do not primarily live will be referred to as the obligor." Tenn. Comp. R. & Regs. 1240-2-4-.03(1) (2003). Our supreme court has stated that "the Child Support Guidelines contemplate that child support may be awarded *only to the primary residential parent." Gray v. Gray*, 78 S.W.3d 881, 884 (Tenn. 2002) (emphasis added). The legislature defines the "primary residential parent" as "parent with whom the child resides more than fifty percent (50%) of the time." Tenn. Code Ann. § 36-6-402(4) (2003).

Additionally, "the child support award is based on a flat percentage of the *obligor's net income*." Tenn. Comp. R. & Regs. 1240-2-4-.03(2) (2003) (emphasis added). Thus, an award of child support to an obligee parent is to be calculated based solely upon the net income of the obligor parent, and the obligee parent's income should not enter into the calculation. *Gallaher v. Elam*, 104 S.W.3d 455, 462 (Tenn. 2003); *Gray*, 78 S.W.3d at 883-84. The Permanent Parenting Plan entered by the trial court in this case merely states that Husband "is designated the primary residence for

---

[5]The new "income shares" model of the Guidelines adopted by the Tennessee Department of Human Services did not take effect until January of 2005. The trial in this case was conducted in 2003. Thus, the new "income shares" model of the Guidelines is inapplicable to the present case.

purpose of determining school zoning." Thus, it is not entirely clear that the trial court designated a primary residential parent, as that term is used in the Tennessee Code and Guidelines, in this case.

At the outset, we note that the trial in this matter occurred on October 23, 2003, and the trial court entered a final decree on December 23, 2003. Thus, at the time of adjudicating this case, our supreme court had instructed that only the primary residential parent was entitled to receive child support. *Gray*, 78 S.W.3d at 884. This Court had also held on two occasions prior to the hearing in this case that, should neither parent be designated a primary residential parent and a parenting plan grants the parents equal parenting time, then neither parent is entitled to child support. *Davis v. Davis*, No. M2003-02312-COA-R3-CV, 2004 Tenn. App. LEXIS 664, at *13-14 (Tenn. Ct. App. Oct. 12, 2004) (citing *Cox v. Cox*, No. E2002-02034-COA-R3-CV, 2003 Tenn. App. LEXIS 257, at *8-10 (Tenn. Ct. App. Mar. 31, 2003); *Bailey v. Capps*, No. M1999-02300-COA-R3-CV, 2001 Tenn. App. LEXIS 214, at *11-12 (Tenn. Ct. App. Apr. 2, 2001)).

In *Hopkins v. Hopkins*, 152 S.W.3d 447 (Tenn. 2004), our supreme court dealt with a situation where a trial court awarded the parents equal parenting time. *Hopkins*, 152 S.W.3d at 448. In interpreting the Guidelines, the supreme court stated:

> We decline to adopt a bright-line rule that no child support is owed when a child's residential time is divided equally between the parents.
> The Child Support Guidelines do not expressly provide for an equal division of residential time. Instead, the Guidelines address situations in which a child resides primarily with one parent. . . . However, we do not interpret [the definition of primary residential parent] as precluding a child's residential schedule from being divided equally between the parents. While silent on this precise issue, the Guidelines "are designed to consider the actual physical custody of the child(ren), regardless of whether custody is awarded to one parent and visitation to the other or such an arrangement is ordered to be joint custody or split custody." Tenn. Comp. R. & Regs. 1240-2-4.02(6).
> Having decided that an equal division of time is permissible under the Guidelines, we must address the manner in which child support is to be calculated in such a situation. In situations in which overnight time is divided more equally between the parents, courts should make a case-by-case determination as to the appropriate amount of support.

*Id.* at 449-50 (citation omitted). The supreme court remanded the case to the trial court for a designation of the primary residential parent and a determination of the child support obligation owed by the non-primary residential parent. *Id.* at 450; *see also Davis*, 2004 Tenn. App. LEXIS 664, at *13-20 (discussing the effect of the *Hopkins* decision on joint custody cases).

Although the trial court did not have the benefit of the supreme court's decision in *Hopkins* when it decided this case, its decision was still in contravention of then existing law. The supreme court had already stated in *Gray* that only the primary residential parent may be awarded child support. *Gray*, 78 S.W.3d at 884. Therefore, even it we were to assume that the trial court's permanent parenting plan named Husband the primary residential parent, it would only be proper to award child support to Husband, not Wife. Conversely, if we assume the trial court's permanent parenting plan did not name a primary residential parent and awarded the parent's equal parenting time, then neither parent would be entitled to child support. *Davis*, 2004 Tenn. App. LEXIS 664, at *13-14. In addition, assuming the trial court was using the Guidelines to render its decision regarding child support,[6] the court also erred in considering both parent's income and ordering both parents to pay child support. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03(2) (2003) ("the child support award is based on a flat percentage of the obligor's net income"); *see also Gallaher*, 104 S.W.3d at 462; *Gray*, 78 S.W.3d at 883-84.

Furthermore, even if it were permissible for a trial court to deviate from the Guidelines and order both parent's to pay child support in this case, the Guidelines provide a specific procedure for doing so, stating:

> These guidelines shall be applied as a rebuttable presumption in *all* child support cases. If the court finds that the evidence is sufficient to rebut the presumption that the application of the guidelines is the correct amount to be awarded, then the court must make a *written or specific finding* that the application of the child support guidelines would be unjust or inappropriate in that particular case. Findings that rebut these guidelines must state the amount that would have been required under the guidelines and *include a justification for deviation from guidelines* which takes into consideration the best interest of the child.

Tenn. Comp. R. & Reg. 1240-2-4-.02(7) (2003) (emphasis added); *see also Gallaher*, 104 S.W.3d at 462; *State ex. rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001); *Rubin v. Kirshner*, 948 S.W.2d 742, 747 (Tenn. Ct. App. 1997). Thus, in the event that the trial court attempted to deviate from the Guidelines, it erred by failing to enter specific or written findings including a justification for its deviation.

We have previously determined that Wife should be the primary residential parent for Cameron with Husband having liberal visitation. Accordingly, in creating a permanent parenting

---

[6] We assume that the trial court was attempting to use the Guidelines to set child support in this case because the Permanent Parenting Plan provides that the parties' child support obligations were set "in accordance with the Tennessee Child Support Guidelines." In addition, the amount of child support the court ordered each party to pay based on the court's determination of each party's net income corresponds to the amounts arrived at by using the Guidelines.

plan on remand, the trial court is instructed to recalculate the amount of child support that Husband, as the obligor parent, owes to Wife, as the obligee parent, consistent with the Guidelines and this opinion. However, we cannot end our analysis of this issue at this point. At the conclusion of the hearing below, the trial court stated that it found Husband to be underemployed. Husband takes issue with this finding on appeal, arguing that the trial court should have calculated his child support obligation based on his current income.

The Guidelines provide that, "[i]f an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." Tenn. Comp. R. & Reg. 1240-2-4-.03(d) (2003). "To calculate a child support award based on earning capacity rather than actual net income, there must be a threshold finding that the obligor is willfully and voluntarily underemployed or unemployed." *Marcus v. Marcus*, No. 02A01-9611-CV-00286, 1998 Tenn. App. LEXIS 55, at *8 (Tenn. Ct. App. Jan. 28, 1998). "Whether a party is willfully and voluntarily underemployed is a fact question, and the trial court has considerable discretion in its determination." *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001). Due to the factual nature of this determination, a finding of underemployment must be supported by the evidence in the record. *Lacey v. Lacey*, No. W2002-02813-COA-R3-CV, 2003 Tenn. App. LEXIS 790, at *8 (Tenn. Ct. App. Oct. 31, 2003); *Marcus*, 1998 Tenn. App. LEXIS 55, at *8.

The courts of this state are more apt to find that an obligor parent is willfully and voluntarily underemployed when he or she voluntarily leaves that employment to accept employment providing significantly less income. *See Lacey*, 2003 Tenn. App. LEXIS 790, at *8; *State ex. rel. Ledbetter v. Godsey*, No. M1998-00958-COA-R3-CV, 2000 Tenn. App. LEXIS 406, at *13-15 (Tenn. Ct. App. June 22, 2000); *Willis*, 62 S.W.3d at 738; *Ralston v. Ralston*, No. 01A01-9804-CV-00222, 1999 Tenn. App. LEXIS 529, at *11 (Tenn. Ct. App. Aug. 3, 1999). Husband's undisputed testimony establishes that he did not voluntarily leave his job at Service Merchandise, but the company terminated his position when it filed for bankruptcy. In support of her argument that Husband is willfully and voluntarily underemployed, Wife points to her testimony that Husband threatened to quit his job and lower his income. Even assuming Husband did make this statement, it does not change the fact that his employment with Service Merchandise was involuntarily ended.

"While the initial loss of employment may have been involuntary, an obligor's course of action and decision-making after termination can demonstrate willful and voluntary underemployment." *Godsey*, 2000 Tenn. App. LEXIS 406, at *15. However, there is no proof in the record indicating that Husband's actions after losing his job rise to the level of willful and voluntary underemployment. As we have previously stated, "[a]lthough there is no requirement that a parent intended to avoid their child support obligations by their actions, we do think that willful or voluntary unemployment or underemployment must result from an intent on the part of the parent to reduce or terminate his or her income." *Wilson v. Wilson*, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000). Since the record is devoid of any evidence showing such an intention, the trial court erred in finding Husband to be willfully and voluntarily underemployment. *See Lacey*, 2003 Tenn. App. LEXIS 790, at *9-10 (affirming a trial court's finding that a parent was not willfully and voluntarily

underemployed where the undisputed evidence presented at trial showed the loss of her prior job was involuntary and unforseen); *Beem v. Beem*, No. 02A01-9511-CV-00252, 1996 Tenn. App. LEXIS 717, at *7-8 (Tenn. Ct. App. Nov. 5, 1996) (noting that a trial court erred in finding that the husband was willfully and voluntarily unemployed when his undisputed testimony showed that he lost his job because his position was terminated and did everything possible to secure other employment). Accordingly, we hold that the trial court erred in determining Husband to be underemployed, and the trial court is instructed on remand to calculate Husband's child support obligation based upon his current income.

## *C.*
### *Alimony*

The trial court ordered Husband to pay Wife transitional alimony in the amount of $750.00 per month for three years. On appeal, Husband argues that the trial court heard no evidence regarding Wife's need, her economic disadvantage, or his ability to pay. In addition, Husband points to the fact that Wife did not request alimony in her complaint for divorce. While admitting that the trial court did not make specific findings regarding her economic disadvantage or need, Wife argues that, by granting an award of transitional alimony, the trial court implicitly made both findings. Likewise, Wife also argues that the trial court made an implicit finding that Wife did not need rehabilitation, which Wife asserts is correct.

"There are no hard and fast rules for spousal support decisions." *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). "Whether an alimony award is appropriate is dependent on the facts and circumstances of each case." *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). Due to the factually driven nature of the decision, courts must weigh numerous factors, including those set forth by the legislature in section 36-5-101(d)(1)(E) of the Tennessee Code. *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). "The trial court has broad discretion in determining the type, amount, and duration of alimony based upon the particular facts of each case." *Sullivan*, 107 S.W.3d at 511 (citing *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998)); *see also Nelson v. Nelson*, 106 S.W.3d 20, 23 (Tenn. Ct. App. 2002).

Recognizing that trial courts have broad discretion in determining whether alimony is appropriate in a given case, *Nelson*, 106 S.W.3d at 23; *Anderton*, 988 S.W.2d at 682, we employ the following standard of review in evaluating such decisions:

> We review matters of alimony under an abuse of discretion standard. If the discretionary decision is within a range of acceptable alternatives, appellate courts will not substitute their decision for that of the trial court simply because the appellate court would have chosen a different alternative. *White v. Vanderbilt Univ*., 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). We review the trial court's discretionary decisions to determine: (1) whether the decisions are supported by the facts in evidence; (2) whether the trial court

identified and applied the applicable legal principles; (3) whether the trial court's decisions are within the range of acceptable alternatives. *Id*.

*Sullivan*, 107 S.W.3d at 510. "Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Anderton*, 988 S.W.2d at 682.

We begin with Husband's assertion that Wife did not request alimony in her complaint. "In this State a divorce may be granted without alimony, and alimony may be granted without decreeing a divorce, there being no necessary or absolute connection between divorce and alimony under the statute." *Qualls v. Qualls*, 589 S.W.2d 906, 909 (Tenn. 1979). When a party files a complaint for divorce, "[t]he complaint for divorce shall set forth the grounds for divorce in substantially the language of the [applicable statutes], and pray for a divorce from the defendant, or for a divorce *and such other and further relief to which the complainant may think to be entitled."* Tenn. Code Ann. § 36-4-106(a)(1) (2003) (emphasis added). In *Qualls*, our supreme court held that "a prayer for general relief is not sufficient to support an award of alimony *in a case which the judgment is taken upon default of the defendant."* *Qualls*, 589 S.W.2d at 909 (emphasis added). The subsequent decisions of this Court have interpreted the decision in *Qualls* as being limited to the default judgment context. *See West v. West*, No. M1998-00725-COA-R3-CV, 2000 Tenn. App. LEXIS 37, at *11-12 (Tenn. Ct. App. Jan. 27, 2000); *Bulla v. Bulla*, No. 01-A-01-9004-CV-00133, 1990 Tenn. App. LEXIS 774, at *9 (Tenn.Ct. App. Oct. 24, 1990); *Allen v. Allen*, No. 89-288-II, 1990 Tenn. App. LEXIS 61, at *9 (Tenn. Ct. App. Feb. 2, 1990); *Moore v. Moore*, No. 87-92-II, 1988 Tenn. App. LEXIS 424, at *5-6 (Tenn. Ct. App. June 24, 1988).

While it is advisable for parties to include a specific prayer for alimony in their complaints, *See Moore*, 1988 Tenn. App. LEXIS 424, at *5, Wife's failure to do so in this case is not fatal to the trial court's award of alimony.[7] When a complaint contains no indication that a party is seeking alimony in a divorce proceeding or the party expressly negates a request for alimony during the course of the proceedings, an award of alimony by a trial court may very well be improper. *See Allen*, 1990 Tenn. App. LEXIS 61, at *8-9 (noting that the issue of alimony must be tried, and the obligor spouse must be given an opportunity to demonstrate that alimony is not needed in a given case.) However, Wife's complaint does contain a general prayer for relief, thereby placing Husband on notice that she sought maintenance and support. *See Bulla*, 1990 Tenn. App. LEXIS 774, at *9-10.

We now turn to the trial court's decision to award Wife alimony in this case. "The purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when

---

[7]We are somewhat puzzled by the trial court's oral findings at the conclusion of the trial in this case, providing as follows: "Taking into consideration support obligations, *the pleadings asked for temporary alimony*, but I think there should be some transitional alimony here." (emphasis added.) After reviewing Wife's complaint for divorce, we find no specific references to alimony in any form.

economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce." *Anderton*, 988 S.W.2d at 682 (citing *Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980)). Our legislature has defined transitional alimony asfollows:

> Transitional alimony means a sum of money payable by one (1) party to, or on behalf of, the other party for a determined period of time. . . . Transitional alimony is awarded *when the court finds that rehabilitation is not necessary*, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

Tenn. Code Ann. § 36-5-101(d)(1)(D) (2003) (emphasis added). The recipient spouse's need and the obligor spouse's ability to pay are the primary considerations in determining whether alimony is warranted in a given case, *Bratton v. Bratton*, 136 S.W.3d 595, 604 (Tenn. 2004), with the recipient spouse's need being the "cornerstone for the award of alimony." *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984).

As with the other issues raised by the parties on appeal, our task is complicated somewhat by the fact that the trial court made no findings of fact regarding the alimony award. The record contains no findings by the trial court to the effect that Wife was economically disadvantaged or not in need of rehabilitation. Upon reviewing the record, we find no evidence regarding Wife's need for alimony.[8] Although Wife's complaint was sufficient to place Husband on notice that alimony would be sought in this case, "there must be some evidence in the record from which alimony may be granted." *Allen*, 1990 Tenn. App. LEXIS 61, at *9; *see also Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). Finding none, we must conclude that the trial court's award of alimony in this case was an abuse of the trial court's discretion and reverse that decision.

### D.
### *Attorney's Fees*

Both parties have requested that this Court award them their respective attorney's fees on appeal. This state follows the firmly established American rule which provides that litigants are responsible for their own attorney's fees absent a statute or agreement between the parties providing otherwise. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). In divorce proceedings, the recovery of attorney's fees by a litigant is provided for by statute which

---

[8]Wife argues that, pursuant to section 36-5-101(d)(1)(B) of the Tennessee Code, the courts of this state are required to award spousal support to allow the economically disadvantaged spouse's standard of living post-divorce to remain comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living enjoyed by the other spouse. In support of this position, Wife points to the disparity in income imputed to the parties by the trial court. In reversing the trial court's decision regarding child support, we noted that the trial court erred by imputing income to the Father instead of considering his current income. Thus, the gap in earnings between the parties is not as wide as Wife suggests.

provides that a spouse seeking enforcement of an alimony or custody award in a decree may be granted attorney's fees in the discretion of the court before whom the action is pending. Tenn. Code. Ann. 36-5-103(c) (2003).

The discretion to award attorney's fees on appeal in a proceeding of this nature rests within the discretion of the Court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case. *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 Tenn. App. LEXIS 628, at *26-27 (Tenn. Ct. App. Sept. 3, 2003) (citing *Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn. 1962)); *see also Shofner v. Shofner*, No. M2003-01550-COA-R3-CV, 2004 Tenn. App. LEXIS 865, at *41 (Tenn. Ct. App. Dec. 23, 2004).

Regarding Wife's request for attorney's fees, we note that, on appeal, Wife is not seeking to enforce the custody arrangement ordered by the trial court. Rather, she is seeking to have the custody arrangement overturned on appeal. Thus, since she is not seeking to enforce the decree, therefore, we deny her request for attorney's fees. Husband's request for attorney's fees is likewise denied because he is not seeking to enforce the final decree on appeal but, instead, seeks to have it declared invalid by this Court. *See Parchman v. Parchman*, No. W2003-01204-COA-R3-CV, 2004 Tenn. App. LEXIS 768, at *15-16 (Tenn. Ct. App. Nov. 17, 2004). Additionally, since both parties have prevailed regarding their respective issues raised on appeal, we decline to grant either party's request for attorney's fees in this case. *See Baggett v. Baggett*, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973).

## III.
### CONCLUSION

For the reasons set forth herein, we reverse the decisions of the trial court regarding child custody, child support, and alimony. We remand this case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are to be taxed equally between the Appellant, Suzan Darvarmanesh and her surety, and the Appellee, Mahyar Gharacholou, for which execution my issue if necessary.

_____
ALAN E. HIGHERS, JUDGE