IN THE COURT OF APPEALS OF TENNESSEE
AT  KNOXVILLE
January 15, 2015 Session

## CHRISTY L. GRIFFITH v. GLEN H. GRIFFITH

Appeal from the Chancery Court for Bradley County
No. 2013-CV-126     Jerri S. Bryant, Chancellor

_____

No. E2014-00892-COA-R3-CV-FILED-APRIL 14, 2015

_____

This divorce case involves issues of property classification, valuation, and division.  The parties were married for fifteen years, with one child born of the marriage.  At the time the parties married, the husband owned an interest in his family's motorcycle dealership.  The husband inherited remaining interests in that dealership from his parents during the marriage.  At trial, the court found that the dealership was a separately owned asset that became marital property by reason of transmutation.  The trial court also made determinations regarding the value of the dealership and the real property upon which it operates.  Following these determinations, the trial court rendered what it considered to be an equitable division of the parties' marital assets.  Husband has appealed.  Because we determine the trial court's classification and valuation of the dealership to be in error, as well as the valuation of the business-related real property, we further determine the overall distribution of marital assets to be in error.  We vacate the trial court's judgment with regard to those issues and remand for further proceedings.  The balance of the trial court's judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, Glen H. Griffith.

H. Franklin Chancey, Cleveland, Tennessee, for the appellee, Christy L. Griffith.

## OPINION

### I. Factual and Procedural Background

The plaintiff, Christy L. Griffith ("Wife"), and the defendant, Glen H. Griffith ("Husband"), were married in September 1998. One child was born to their marriage on January 11, 2000.[1] Following the parties' separation on May 1, 2013, Wife filed a complaint for divorce on May 28, 2013. At the time of the divorce hearing, Wife was forty-four years old while Husband was fifty-seven years of age.

Husband owns a Kawasaki dealership in Cleveland known as Griffith's Kawasaki ("the Business"), which has been owned by his family since before his birth. At the time of the parties' marriage, Husband owned a one-third interest regarding the Business. He subsequently inherited the remaining two-thirds interest upon the deaths of his parents in 2001. The parties own the real property upon which the Business is located, 150 Worth Street ("Worth Street Property"), as tenants by the entirety. Following the deaths of his parents in 2001, Husband inherited a fifty-percent interest in the Worth Street Property. The remaining fifty-percent interest was owned by his uncle. The parties subsequently obtained a joint loan to purchase the uncle's ownership interest, thereby acquiring title to the Worth Street Property as tenants by the entirety. The installment payments relative to the loan for the purchase of the Worth Street Property have been made by the Business.

In addition to the Business and the Worth Street Property, Husband inherited from his parents three vacant lots behind the Business. One of those lots was subsequently sold to a third party. Husband retained ownership of the other two lots. In recent years, Husband entered into an agreement to sell the Business to Mr. Tony Oglesby for $225,000.00. That sale, however, was never consummated. Husband received earnest money of $25,000.00, which he deposited into the Business's account and used for expenses. He testified at trial that he considered the $25,000.00 earnest money deposit to be a debt of the Business.

Wife had worked for the Bank of Cleveland for twenty-two years at the time of trial. Regarding her employment, she earned between $90,000.00 and $100,000.00 per year for the past few years. Wife testified that she had the ability to work and earn this level of income for many more years. Husband, by contrast, had never been employed outside of the Business. Husband's earnings for the last four years averaged approximately $8,000.00 per year, which he asserted was due to a downturn in the economy and a reduction in the demand for recreational vehicles. By contrast, Wife testified that Husband had, in previous years, earned approximately $400.00 to $500.00

---

[1] No issues are raised regarding co-parenting in this appeal.

per week from the Business. Since Husband's income had dropped, Wife was responsible for paying the mortgage on the marital residence and most all other household bills.

Wife claimed that while Husband was inattentive to the Business, their marriage, and their child, he instead spent inordinate amounts of time on other pursuits, including gambling. Wife attempted to demonstrate at trial that Husband satisfied numerous personal expenses through the Business while writing many checks from the Business's account simply to cash. Wife also established that the deposits to the Business's account did not comport with the Business's reported sales. Wife admitted that the Worth Street Property had been appraised in 2012 at a value of $190,000.00, although she believed that the value of a garage attached to that property should be added, such that the total value of the Worth Street Property would be $240,000.00.

The parties' marital residence was located on twenty acres of real property. The premises were purchased from Husband's family in 2006 for $227,000.00. The home and real property appraised in May 2012 for $300,000.00. Wife stated at trial that the appraisal was disappointing as she believed the home to have been worth more. At the appraised value, the home essentially maintained no equity.

Upon the outset of trial, the parties, pursuant to local rule, presented a master asset and liability list in which they purportedly stipulated as to the classification and division of certain assets. The parties listed the Business as Husband's separate property. Wife's counsel, however, asserted during his opening statement that there was an issue of transmutation that would be addressed during the parties' testimony. Following the presentation of proof, which included a large volume of testimony regarding the parties' respective contributions to the Business, Wife's counsel indicated in closing that she did not intend to stipulate that the Business was Husband's separate property. Rather, her intent was simply to list the Business and its value as a disputed asset, which Husband claimed was his separate property.

Upon the conclusion of trial, the court took the matter under advisement. In later announcing its rulings from the bench, the court noted that the Business was stipulated on the master asset list to be Husband's separate property; however, the court found that the proof did not support a determination that the Business was Husband's separate property. The court ruled that the Business was marital property by operation of transmutation, based on Wife's direct and indirect contributions during the marriage. The court, *inter alia*, awarded the Business to Husband in the overall division of marital assets.

With regard to the $25,000.00 alleged debt owed to the potential buyer of the Business, representing the buyer's earnest money deposit, the trial court stated:

3

The husband received $25,000.00 from Tony Oglesby as earnest money for a potential purchase of the Kawasaki business and which Husband deposit[ed] in the business checking account. The Court is unable to determine whether these funds are subject to repayment by the husband or the business. In any event, whether the funds represent an asset or a debt they are awarded to the husband as part of an equitable division of property.

Further, regarding the Worth Street Property, the trial court determined its value to be $240,000.00 based on Wife's expressed opinion of its value, notwithstanding the $190,000.00 appraisal. The court divided all marital assets between the parties. In so doing, the court awarded Wife one hundred percent of her retirement investments, which included her 401(k) and bank stock. The court also ordered the marital residence to be sold. Husband has appealed the trial court's classification, valuation, and division of marital property.

## II. Issues Presented

Husband presents the following issues for our review:

1. Whether the trial court erred in its classification of the parties' assets and debts.

2. Whether the trial court erred in its valuation and division of the marital estate.

3. Whether Husband should be awarded attorney's fees on appeal.

## III. Standard of Review

As this Court has previously explained:

Dividing a marital estate necessarily begins with the systematic identification of all of the parties' property interests. The second step is to classify each of these property interests as either separate or marital property. Tennessee is a "dual property" state. Accordingly, property cannot be included in the marital estate unless it fits within the definition of "marital property" in Tenn. Code Ann. § 36-4-121(b)(1)(A) (2005). By the same token, "separate property," as defined in Tenn. Code Ann. § 36-4-121(b)(2), should not be included in the marital estate.

4

Questions regarding the classification of property as either marital or separate, as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual. Accordingly, the appellate courts review a trial court's decisions classifying property using the familiar standard of review in Tenn. R. App. P. 13(d).

*Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007) (internal citations omitted).

The value of marital property is also a fact question. *See Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). As this Court explained:

a trial court's decision with regard to the value of a marital asset will be given great weight on appeal. In accordance with Tenn. R. App. P. 13(d), the trial court's decisions with regard to the valuation and distribution of marital property will be presumed to be correct unless the evidence preponderates otherwise.

The value of a marital asset is determined by considering all relevant evidence regarding value. The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted.

*Wallace*, 733 S.W.2d at 107 (internal citations omitted).

Regarding the equitable division of marital property, our Supreme Court has elucidated:

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the

trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744–45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

### IV. Classification and Valuation of the Business

Husband asserts that the trial court erred in its classification of the Business as marital property because he owned a one-third interest in the Business before the parties' marriage and inherited the remaining two-thirds interest upon the deaths of his parents. As Husband points out, Tennessee Code Annotated § 36-4-121(b)(2) (2014) defines separate property in pertinent part as that owned by a party before marriage or acquired by a party at any time by "gift, bequest, devise or descent."

Husband also contends that the trial court erred in determining that this asset had been transmuted into marital property because (1) the parties' stipulated in the master asset list that the Business was Husband's separate property, and (2) the proof did not support that transmutation had occurred. With regard to this asset, the trial court stated:

> And it appears that the Kawasaki dealership was stipulated as being his separate property and I'm not sure that's what the facts of this case bear out and that's one of the things that have puzzled me in how to deal with that because am I bound by their stipulations of that fact.
>
> The parties have been married for many years and I think that it's been through a big part of the wife's efforts that Mr. Griffith has been able to continue to operate the dealership. It's certainly with her efforts that they were able to purchase his two-thirds interest in that business and building.
>
> And there was certainly some sort of argument to be made that it may have transmuted to marital property but I have the stipulation that it was separate property. So I'm not sure legally what that [provides] me to deal with this but I'm going to try and give you what I think is the best way to divide these assets and these debts.

6

* * *

As far as husband's motorcycle shop is concerned, certainly I find that that has transmuted into marital property.

* * *

And the Kawasaki dealership is stipulated as his separate property although I'm taking that into consideration that he would probably not have that . . . business if it weren't for wife's ability to – if not directly contribute to that business, at least pick up the slack at home so that he could continue to keep his money from his business.

I don't find his testimony about the value of the business or its cash flow to be credible. And I'm not saying that I don't believe his testimony. I'm saying that I don't think he is as strong of a business person to have a credible opinion about his business. I think that his deposits don't match his sales. I think he's taking cash from the business and running personal expenses through the business such that he probably doesn't have a good feel for either the value of the business or how to maximize profits from the business.

But for those reasons and because I don't feel good about the value of the Kawasaki business and whether it was, in fact, separate property I'm awarding that business to him.

Husband initially argues that the trial court erred in ignoring the parties' stipulation in the master asset list that the Business was Husband's separate property. Husband posits that stipulations "are binding on the parties as well as the court." *See Bearman v. Camatsos*, 385 S.W.2d 91, 93 (Tenn. 1964). Wife contends, however, that there was no stipulation that this asset was Husband's separate property. Rather, Wife states that her intent by listing this asset as Husband's separate property in the master asset list was that Husband would be awarded this asset in the division. Wife states that she never agreed that the asset should be classified as Husband's separate property, as clearly shown by her testimony at trial regarding transmutation.

As our sister court has explained: "A stipulation is an *agreement between counsel* with respect to business before a court. Stipulations are favored and should be encouraged and enforced by the courts, since they expedite the business of the courts." *State v. Ford*, 725 S.W.2d 689, 692 (Tenn. Crim. App. 1986) (emphasis in original)

7

(quoting 83 C.J.S. *Stipulations* § 1). Further, "stipulations will be rigidly enforced by the courts of this State." *Bearman*, 385 S.W.2d at 93.

Following our thorough review of the transcript in this matter, we agree with Wife that there was no enforceable stipulation that this asset was Husband's separate property. At the beginning of trial, the parties presented a master asset list to the court, which listed the Business as Husband's separate property. Wife's counsel, however, offered during his opening statement that there was a question regarding transmutation that would be addressed through the parties' testimony.

As the trial continued, both parties were questioned regarding their respective contributions to the Business. At the conclusion of the proof, Wife's counsel insisted during closing that Wife did not intend to stipulate that the Business was Husband's separate property. Rather, her intent was simply to list the Business and its value as a disputed asset that Husband claimed as his separate property. Having reviewed the proceedings in their entirety, we do not find that the master asset list, which identified the Business as Husband's separate property, constituted a stipulation of the parties regarding the issue of classification of that asset.

That being established, we note that the Business was clearly Husband's separate property because he (1) owned a one-third respective interest before the parties' marriage, and (2) inherited the remaining two-thirds interest upon the deaths of both of his parents in 2001. *See* Tenn. Code Ann. § 36-4-121 (a)(2)(A) and (D).[2] We must, therefore, determine whether the trial court properly classified the Business as a marital asset on the basis of transmutation.

Wife posits that it was only through her efforts that Husband was able to retain the Business by the time of trial. She asserts that she performed bookkeeping services for the Business, obtained loans against her 401(k) investment to pay the property taxes for the Worth Street Property where the Business operated, and co-signed the loan to purchase the outstanding interest in the Worth Street Property from Husband's uncle. Wife also made indirect contributions during the marriage as a wage earner and homemaker. Wife contends that all of these factors support the trial court's determination that transmutation

---

[2] Tennessee Code Annotated § 36-4-121 (a)(2) defines "separate property" as:

> (A) All real and personal property owned by a spouse before marriage . . . .
>
> * * *
>
> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent . . . .

occurred.  We disagree.

As our Supreme Court has explained:

[Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . .  The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate.  This presumption is based upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital.  The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (citing HOMER H. CLARK, THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 16.2 at 185 (2d ed.1987)).   As Wife points out, this Court has also previously explained:

Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property.  Accordingly, our court has classified separately owned real property as marital property when the parties agreed that it should be owned jointly even though the title was never changed, or when the spouse owning the separate property conceded that he or she intended that the separate property would be converted to marital property.

*Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407 at *4 (Tenn. Ct. App. Sept. 1, 2006) (internal citations omitted).

In this case, the asset in question is an ongoing business operation, not real property as in *Fox*.  *See id*.  However, even if the factors enumerated in *Fox* are applied to the Business herein, there is no proof to support application of transmutation.  Factor number one is clearly inapplicable because the asset at issue is a business entity.  Factor number two does not support a theory of transmutation as the only act performed by Wife to maintain the Business was to assist with certain bookkeeping tasks.  Wife admitted that Husband handled all day-to-day aspects of operating the business, including writing checks, paying expenses, paying and managing employees, and generally keeping the

business going.  There was a dearth of evidence that Wife ever worked in or managed the Business.

With regard to factor number three, there was no proof that Wife's name was ever placed on the Business, jointly or otherwise.  Regarding factor number four, while there was evidence that Wife used the strength of her credit to help Husband purchase his uncle's interest in the Worth Street Property upon which the Business operated, the real property was treated as a distinct and separate asset from the Business itself.  There was an absence of proof that Wife ever used her credit to aid or improve the Business.

Further, this Business was not treated by the parties in such a way as to evince an intention that it become marital property.  Husband never conceded that it was jointly owned or should be considered a marital asset.  As such, there was no gift to the marital estate, and the Business remained Husband's separate property.  The trial court therefore erred in determining that the Business was transmuted to marital property based on the evidence presented.

Regarding the valuation of this asset, Husband also takes issue with the trial court's treatment of the $25,000.00 "debt" owed by the Business to Tony Oglesby.  Both parties testified at trial that Mr. Oglesby and Husband entered into an agreement whereby Mr. Oglesby would purchase the Business for $225,000.00.  In furtherance of the intended transaction, Mr. Oglesby remitted an earnest money payment to Husband in the amount of $25,000.00, which Husband deposited into the account of the Business and utilized to pay bills.  Unfortunately, the proposed purchase of the Business was never completed.  According to Husband, this failure was due to prohibitive corporate requirements that Kawasaki placed upon new dealership owners.  Husband thus testified that the Business was obligated to repay the $25,000.00 earnest money deposit to Mr. Oglesby.

As pertinent to this issue, the trial court explained in its memorandum opinion:

> The Tony Oglesby.  I don't have any proof on that other than [Husband's] testimony that he's kept $25,000 that he lists as a debt and I'm listing it as an asset that he has kept.  I don't know where it is.  I don't know if he's going to pay it back.  I don't have proof that he owes it back. I don't have proof of why that deal fell through or that it may go through.  I find that the testimony concerning that is shady at best and certainly doesn't clarify the legal status between Mr. Oglesby and the sale of the Kawasaki Business itself.

10

In its written final judgment, the court addressed this item as follows:

> h)  The husband received $25,000.00 from Tony Oglesby as earnest money for a potential purchase of the Kawasaki business and which Husband deposit[ed] in the business checking account. The Court is unable to determine whether these funds are subject to repayment by the husband or the business. In any event, whether the funds represent an asset or a debt they are awarded to the husband as part of an equitable division of property.
>
> i)  The Kawasaki business, stipulated as Husband's separate property, is declared to have been transmuted to marital property and the same shall be and hereby is awarded to Husband. In light of the Court's findings set forth in above paragraph (h), the Kawasaki business is assigned a net value of $192,754.36.

The trial court therefore adjusted the value of the Business, which the parties stipulated to be $225,000.00, to $192,754.36. The trial court ostensibly arrived at this amount by adding the $25,000.00 earnest money deposit to the stipulated value of $225,000.00 and then subtracting the other Business debts, which totaled $57,246.54.[3] Thus, the trial court treated the $25,000.00 earnest money deposit as an asset.

Husband posits that the trial court erred in treating the $25,000.00 earnest money deposit as an asset of the Business. We agree. Both parties testified at trial that Husband received this earnest money deposit from a potential buyer of the Business. Further, both parties testified that Husband deposited this money into the Business's checking account and subsequently spent it on business-related expenses. While Husband was the only person to testify that the money had to be repaid to Mr. Oglesby, and the trial court considered Husband's testimony regarding this issue to be "shady at best," such does not provide a proper basis for adding the value of the $25,000.00 earnest money deposit to the stipulated value of the Business. Undisputed were the circumstances that this money had been received and spent. Had the court found the proof insufficient regarding whether this amount was actually a debt, it should have simply disregarded it.

Having concluded that the trial court erred in both the classification and valuation of the Business, we further conclude that this case must be remanded for a proper determination of the Business's value. We vacate the trial court's classification of the Business as marital property due to transmutation as well as the trial court's determination of the Business's value. We accordingly also vacate the court's overall

---

[3] We note that $250,000.00 minus $57,246.54 is actually $192,753.46. This apparent mathematical error in the amount of 90¢ does not affect our analysis.

distribution of marital property. Upon remand, the trial court is directed to consider any additional proof regarding whether the $25,000.00 amount constitutes a debt in order to properly value the Business. *See Wilkerson v. Wilkerson*, No. W1999-01684-COA-R3-CV, 2000 WL 633462 at *2-3 (Tenn. Ct. App. May 11, 2000) (affirming the trial court's consideration of additional proof regarding the value and distribution of marital assets on remand from this Court) (quoting *First Tennessee Bank Nat'l Assoc. v. Hurd Lock and Mfg. Co.*, 816 S.W.2d 38, 40 (Tenn. Ct. App. 1991) ("'[T]his court, in its original opinion, envisioned and intended that the trial judge, on remand, take all action necessary to do complete justice, including the reception of additional proof.'")). The court should then adjust the equitable division of marital property to account for the re-classification of the Business as Husband's separate property, which analysis will further require consideration of the proper value of this separate property. *See* Tenn. Code Ann. § 36-4-121(c)(6) ("In making equitable division of marital property, the court shall consider all relevant factors including . . .[t]he value of the separate property of each party . . . .").

V. Valuation of Worth Street Property

Husband further asserts that the trial court erred in its valuation of the Worth Street Property. Husband provided no testimony at trial regarding the value of this real property. On the master asset list, Wife valued this property at $240,000.00 while Husband valued it at $190,000.00. During her testimony, Wife acknowledged that the Worth Street Property was appraised in 2012 and assigned a value of $190,000.00. According to Wife, this appraisal did not include the garage, which was also a component of the Business property. Wife explained that when she reviewed the tax appraisal for the garage, which was $50,000.00, she added this amount to the appraised value of $190,000.00 to arrive at her total value of $240,000.00. Husband's counsel objected to this testimony, however, based on the best evidence rule. *See* Tenn. R. Evid. 1002. Counsel asserted that the tax appraisal should be produced; the court sustained that objection. The tax appraisal was never introduced, and no further testimony was presented on this matter.

Husband now asserts that the trial court erred in accepting Wife's valuation of the Worth Street Property. According to Husband, the $190,000.00 appraisal value included the garage for which Wife added value, as evinced by the declaration on the first page of the appraisal report stating that it includes lots "10 & 10.1." Husband asserts that the Worth Street Property "technically includ[es] two lots identified by map and parcel reference as Lot 10 and Lot 10.01," and that the rear lot, or lot 10, is the lot with the garage referred to by Wife in her testimony. We note, however, that the parties presented no evidence regarding this issue at trial. Although Wife did testify that the garage had a separate tax appraisal, no tax records were introduced to demonstrate such fact. No witness discussed whether the Worth Street Property was comprised of one or two lots.

Moreover, the appraisal report also states, "This property is a 2 story commercial building consisting of 5604 S/F per public records with a 1250 S/F BMT," making no mention of a garage. Thus, without additional explanation, we cannot determine whether the respective appraisal included the garage, as Husband asserts, or whether the garage value should be added, as Wife asserts.

Having concluded that this case must be remanded for revaluation of the Business and a proper division of marital assets, we vacate the trial court's determination of value as to the Worth Street Property because we conclude that the evidence preponderates against it. *See Wallace*, 733 S.W.2d at 107. Upon remand, the trial court is directed to hear proof regarding the value of the Worth Street Property and whether the garage value should be added accordingly. *See Wilkerson*, 2000 WL 633462 at *2-3.

## VI. Attorney's Fees on Appeal

Husband argues that he should be granted an award of attorney's fees on appeal. He correctly notes that fee awards on appeal are within the discretion of this Court, with the relevant factors to be considered being: (1) the ability of the requesting party to pay fees, (2) the requesting party's success on appeal, (3) whether the requesting party sought the appeal in good faith, and (4) any other equitable factors that need to be considered. *See Luplow v. Luplow,* 450 S.W.3d 105, 120 (Tenn. Ct. App. 2014). Having considered the record herein and the above factors, we determine that an award of fees on appeal is not warranted in this case.

## VII. Conclusion

For the reasons stated above, we vacate the trial court's classification of the Business as marital property, as well as the trial court's valuation of the Business and the Worth Street Property. We also vacate the trial court's overall division of marital assets. The trial court's judgment is affirmed in all other respects. Costs on appeal are taxed equally to the parties. This case is remanded to the trial court, pursuant to applicable law, for further proceedings consistent with this opinion.

_____
THOMAS R. FRIERSON, II, JUDGE